### GENISCO TECHNOLOGY CORPORATION, Plaintiff,

v.

### Michael P.W. STONE, et al., Defendants.

### Civ. A. No. 92–1049.

United States District Court, District of Columbia.

June 15, 1992.

William Gray Schaffer, John Longstreth, Preston Gates Ellis & Rouvelas–Meeds, Washington, D.C., for plaintiff.

Susan A Nellor, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiff in this case manufactures computer hardware. The defendants are Army officials who are responsible for procuring computer equipment that the Army needs for a particular intelligence project. Plaintiff filed this action seeking declaratory and injunctive relief after the defendants determined that the procurement would not be bid under the small business set-aside program but would instead be made available for general bidding. Plaintiff con-

---

tends that federal law and regulations governing military procurement compel the Army to set aside this contract for small business. The defendants dispute this argument. The Court must review the Army's decision to put the contract out for general bid to see whether it meets the requirements of the applicable procurement statutes, *see* 10 U.S.C. § 2301; 15 U.S.C. § 631, and the Administrative Procedure Act, 5 U.S.C. § 702.

## A. FACTS

Genisco is a high technology firm based in California. One of its subsidiaries, Solaris, produces "ruggedized workstations." To make these, Solaris takes workstations produced by Sun Microsystems and adapts the hardware for use under punishing conditions, e.g. on a desert battlefield or for transportation in trucks. Solaris once before produced ruggedized workstations for the Army. They were used in Operation Desert Storm. To date, Solaris is the only company that has produced ruggedized workstations for the Army.

In February of 1992 the Army decided that it wished to procure 75 ruggedized workstations for use in its All–Source Analysis System. *See* Administrative Record, 15. The All–Source Analysis System is a new technology being developed to serve the intelligence needs of battlefield commanders. The procurement is to be run through the Vint Hill Farms Station in Warrenton, Virginia. To meet its needs, the Army must procure the workstations no later than November of 1992. In the course of preparing the solicitation for bids, the officer in charge of the procurement, Charles Thompson, and the contracting officer, Mary McHale, communicated with officers in the Army's Small and Disadvantaged Business Utilization Office (SADBUO) at Fort Monmouth, New Jersey as well as with individuals in the Small Business Administration (SBA) in the same location. *See* Administrative Record, 22–44. Based on information they gathered from the Army Intelligence Agency and news reports, Thompson and McHale decided that the procurement should be made available for general bidding. *See* Declara-

tion of Charles W. Thompson, ¶ 14, Defendants' Motion to Dismiss. Arthur Widmaier of the SADBUO and John Kosciuch of the SBA initially disagreed and notified Thompson and McHale that it was their view that the procurement should be set aside for small business. *See* Administrative Record, 35, 38. However, after Thompson and McHale responded, both Widmaier and Kosciuch withdrew their objections and agreed with the decision not to set aside the procurement. *See* Declaration of John Kosciuch, Defendants' Motion to Dismiss; Declaration of Arthur Widmaier, Defendants' Motion to Dismiss. Genisco then sued claiming that the Army's decision violated the laws and regulations governing military procurement as well as the Administrative Procedure Act.

Plaintiff next filed a motion for a preliminary injunction. Defendants responded with a motion to dismiss the complaint, or in the alternative, for summary judgment. The Court has held a hearing on the plaintiff's motion for a preliminary injunction. The parties have submitted numerous affidavits and the administrative record for the Court to consider in deciding both of the motions currently pending. Having reviewed all of the submissions, the Court finds that there is no genuine issue of material fact left to resolve and is prepared to decide the parties' motions and to decide the issues in this case. *See Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. LEGALITY OF THE ARMY'S DECISION

After reviewing the administrative record as well as all the submissions of the parties, the Court concludes that the defendants were neither arbitrary nor capricious in their decision not to set aside this procurement for small business. Under the applicable regulations, the Army is required to set aside a procurement for small business only

> if the contracting officer determines that there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns of-

fering the products of different small business concerns ... and (2) awards will be made at fair market prices. *Total set-asides shall not be made unless such a reasonable expectation exists.*

48 C.F.R. § 19.502–2(a) (emphasis added). Only one small business company, Codar, could even marginally meet these requirements. This was because the Army was not fully convinced that Codar could meet the fair market price criteria. Attachment 8, Declaration of Charles W. Thompson, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment; Memorandum for U.S. Small Business Administration (April 9, 1992), Defendants' Motion to Dismiss (authored by Mary McHale). No other small business including Solaris, the Genisco subsidiary was found to be a viable bidder. In this case, the defendants acted in accordance with the regulations.

The determination that Solaris was not a viable bidder for purposes of providing it with virtually an exclusive claim to the contract was fully justified. Army officials responsible for this procurement had information that there had been quality problems with the workstations purchased from Solaris for use in Operation Desert Storm. Administrative Record, 49–50. They also knew that Solaris failed to notify the Army of Sun Microsystems' offer to upgrade the Sun workstations that Solaris had modified. By the time the Army learned of the offer, it had expired, and the Army was forced to negotiate for special treatment from Sun in order to get the upgrade. *Id.* The contracting officer also had legitimate concerns about Solaris' financial condition based on stories published in the Los Angeles Times. Her conclusions from those stories were based largely on quotations given by Genisco company officials and by reports of earnings that Genisco released. *See* Attachment 9, Declaration of Charles W. Thompson, Defendants' Motion to Dismiss.[1] In a procurement like this, where swift and reliable delivery is essential, it was reasonable for the contracting officer to take this information into account.

The defendants had a reasonable basis for their decision not to set aside this procurement for small business. *See Delta Data Systems Corporation v. Webster,* 744 F.2d 197, 204 (D.C.Cir.1984); *Dynalectron v. United States,* 659 F.Supp. 64, 68–69 (D.D.C.1987). Their actions were neither arbitrary nor capricious. They adhered to the requirements of the applicable statutes and regulations, including the requirement that they consult with officials in the Small and Disadvantaged Business Utilization Office and the Small Business Administration. *See* 48 C.F.R. § 19.-201(c)(8); 48 C.F.R. § 19.402(b)(c). Summary judgment will be granted in the defendants' favor.

In conclusion, the Court notes that the decision to make this procurement available for general bidding in no way prevents the plaintiff from bidding on this contract. Plaintiff will have the same opportunity to bid on the procurement as any other company. In fact, as one of the few companies that produces the hardware that the Army needs and as the only company that has already produced ruggedized workstations for the Army, the plaintiff should have a fair opportunity to compete for this contract even though it may be competing with larger companies. At this time, there is no legal basis for ordering the Army to set aside this procurement for small business.

An appropriate order accompanies this opinion.

### ORDER

For the reasons stated in the foregoing opinion, it is this 9 day of June, 1992, hereby

ORDERED that plaintiff's motion for a preliminary injunction is denied; and it is

---

1. One such story printed February 7, 1991 in the Los Angeles Times reported that for fiscal year 1990, Genisco had a $1.2 million loss. A June 23, 1991 Los Angeles Times story reported that Genisco's second-quarter earnings were down 22% from the same quarter during the previous year. A third story, printed December 28, 1991 in the Los Angeles Times reprinted a statement from the company stating that "'This [recapitalization] certainly solidifies our financial position....'"

**360**

FURTHER ORDERED that defendants' motion for summary judgment is granted.